IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAMBA ERIC KONDEH KAMARA, :
    Petitioner :
: No. 1:17-CV-01176
v. :
: (Judge Kane)
WARDEN CLAIRE DOLL, :
    Respondent :

**MEMORANDUM**

Before the Court for consideration is Petitioner Samba Eric Kondeh Kamara's motion to reopen this case and enforce this Court's August 15, 2017 Order (Doc. No. 7), granting his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, insofar as this Court ordered that Petitioner should be afforded an individualized bond hearing before an immigration judge. (Id.) Respondent has filed a brief in opposition to Petitioner's motion (Doc. No. 9), and Petitioner has filed a reply brief (Doc. No. 11).

**I.    BACKGROUND**

On July 5, 2017, Petitioner filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the constitutionality of his prolonged detention by the United States Department of Homeland Security, Immigration, and Customs Enforcement ("ICE"), at the York County Prison without a bond hearing (Doc. No. 1.) Petitioner is a citizen and native of Sierra Leone who was admitted to the United States as a lawful permanent resident on April 15, 2009. (Doc. No. 5 at 2.) Petitioner was convicted in the United States District Court, District of Minnesota, on April 20, 2016 for the offense of "Aided and Abetted by and Aiding and Abetting Each Other, Bank Fraud," in violation of 18 U.S.C. §§ 1344 and 2, and sentenced to ten months' imprisonment. (Id.) A Notice to Appear was issued for Petitioner on July 19, 2016, charging him as removable from the United States pursuant to Section 237(a)(2)(A)(i) of the INA for being convicted of a

1

crime involving moral turpitude.  (Id. at 3.)  On June 13, 2017, an immigration judge denied Petitioner's applications for asylum, for withholding of removal, and protection under the Convention Against Torture ("CAT"), and ordered Kamara removed from the United States to Sierra Leone.  (Id.)  There is a pending appeal before the Board of Immigration Appeals ("BIA").  (Id.)

This Court issued an Order on July 11, 2017, directing Respondent to show cause as to why the relief Petitioner requested—a "bond hearing before an immigration judge"—should not be granted.  (Doc. No. 3.)  In response, Respondent acknowledged that Petitioner's mandatory detention without bond consideration had reached the presumptively unreasonable duration, thus triggering a right to an individualized bond hearing.  (Doc. No. 5.)  See Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469 (3d Cir. 2015); Demore v. Kim, 538 U.S. 510 (2003); Singh v. Sabol, No. 14-CV-1927, 2015 WL 3519075 (M.D. Pa. June 4, 2015).  Respondent further agreed to coordinate with the immigration court to schedule a bond hearing as expeditiously as possible.  (Doc. No. 5); see 8 C.F.R. § 1003.19(c) (providing that the immigration court has jurisdiction to hold such bond hearings and in light of its expertise in immigration law is the appropriate forum for such hearings).

Accordingly, the Court granted the petition and ordered an individualized bond hearing before an immigration judge,  providing that "the immigration judge must make an individualized inquiry into whether detention is still necessary for purposes of ensuring that Petitioner attends removal proceedings and that his release will not pose a danger to the community," and that "the government bears the burden of demonstrating that Petitioner's continued detention is necessary to fulfill the purposes of the detention statute."  (Doc. No. 7.)  At the hearing, the parties presented evidence relating to Petitioner's risk of flight and danger to

the community. (Doc. No. 10-1.) Following consideration of this evidence, the immigration judge denied Petitioner's application for bond. In rendering his decision, the immigration judge correctly articulated the legal standards, noting that the court must consider two primary factors: (1) risk of flight; and (2) danger to the community. (Id.) The immigration judge also observed that the burden of proof and persuasion rested on the Government and it had to carry that burden of proof by clear and convincing evidence. (Id.)

The immigration judge found that the Government met its burden of proof with regard to the question of whether Petitioner presented a danger to the community and in the alternative, whether Petitioner is a flight risk. (Id.) The immigration judge cited Petitioner's criminal history that spanned as far back as 2010, encompassing eleven criminal offenses including several convictions for trespass and driving under the influence, as well as a conviction of federal bank fraud as factors which led to the immigration judge to conclude that Petitioner was an on-going danger to the community. (Id.) With regard to the flight risk, the immigration judge cited to the fact that Petitioner had been ordered removed and denied all relief. (Id.)

## II. DISCUSSION

In his instant motion to re-open, Petitioner requests that this Court set aside the bond denial decision by the immigration judge and either order Petitioner's release from imprisonment, or in the alternative, conduct a constitutionally adequate bond hearing. (Doc. No. 8.) In support, Petitioner argues that the immigration judge failed to comply with this Court's August 15, 2017 Order by not conducting an individualized bond hearing. (Doc. No. 8 at 9.) Petitioner advances that the immigration judge erroneously found that he was a flight risk and ignored evidence of Petitioner's familial ties in his home state of Minnesota and evidence that his former employer has offered him employment upon release from ICE custody. (Id. at 9,10.)

Petitioner also argues that the immigration judge's decision that he is a danger to the community was based on prior events and that Petitioner's past criminal history could not have been enough to meet the Government's burden of "clear and convincing evidence." (Id. at 11.) Respondent counters that Petitioner must first exhaust his administrative remedies by filing an appeal with the Board of Immigration Appeals ("BIA"), and that Petitioner is not entitled to further habeas relief. (Doc. No. 9.)

This District has previously confronted the narrow issue presently by this motion. In Quinteros v. Sabol, No. 4:15-cv-02098, 2016 WL 6525295 (M.D. Pa. Nov. 3, 2016) (Brann, J.), the court addressed whether it retained jurisdiction after it orders an immigration judge to conduct an individualized bond hearing. The court posed the following narrative:

> When a federal district court orders an immigration judge to conduct an individualized bond hearing as requested in a habeas petition, is it improper for the district court to retain jurisdiction for the purpose of conducting its own determination on the merits, prior to the petitioner exhausting his administrat[ive] remedies and the agency's decision becoming final? As a matter of both federalist principles and common-sense practicality, I consider it axiomatic that a federal court should not retain jurisdiction post-referral, but to the extent that it must, such review is necessarily limited to ensuring that the petitioner received the hearing he was owed in the first place. Accordingly, prior to satisfactory showings of exhaustion and finality, the district court should not revisit the merits of the immigration judge's determination. To do so would be premature and would otherwise disregard established constitutional bounds.

Quinteros, 2016 WL 6525295, at * 1. The Court went on to provide that "an immigration judge's conducting an individualized bond determination . . . necessarily moot[s] an underlying habeas petition that solely requests such a hearing be held." Id.; see Carmil v. Green, No. CV 15-8001 (JLL), 2015 WL 7253968, at *3 (D.N.J. Nov. 16, 2015) ("Petitioner has already received the sole relief available to him under Diop and Chavez-Alvarez, a bond hearing, and as such his Petition would be moot and would warrant dismissal for that reason instead.").

In Pierre v. Sabol, No. 1:11-CV-2184, 2012 WL 291794 (M.D. Pa. July 17, 2012) (Caldwell, J.), a case which Respondent cites, the court addressed a motion from the petitioner to reopen his §2241 case after it had been closed upon referral to an immigration judge to conduct a bond hearing, and either require the immigration judge to reconsider his bail amount or release him from detention. Id. 2012 WL 291794, at *1. The court declined on two grounds. First, the court noted that the petitioner received the relief he requested, a hearing before an immigration judge, citing Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011), for the proposition that a "district court has authority to determine if there has been compliance with its earlier habeas order but acted properly in refusing to review the [immigration judge's] refusal to grant bond when the government complied with the habeas order by holding a hearing." Id.

Second, the petitioner failed to exhaust his administrative remedies. The court provided that it could not consider his request for relief until he had exhausted his administrative remedies by appealing the bond decision to the BIA. (Id.); see Leonard, 646 F.3d at 1160-61 (holding that petitioner failed to exhaust administrative remedies when he did not appeal the immigration judge's bond determination to the BIA before seeking habeas relief in district court); German Chajchic v. Rowley, No. 1:17-CV-00457, Report and Recommendation, at 7-8 (M.D. Pa. Jul. 25, 2017) (Carlson, M.J.), Report and Recommendation adopted, German Chajchic v. Rowley, No. 1:17-cv-457, 2017 WL 4387062 (M.D. Pa Oct. 3, 2017) (Conner, C.J.) (providing that "aliens who receive a bond hearing before the immigration judge" are required to "exhaust their administrative remedies and raise any issues with the BIA prior to seeking federal habeas corpus relief").

Moreover, this rule favoring exhaustion of administrative remedies as a prerequisite to the consideration of habeas corpus petitions acknowledges the deference

which should be afforded agency decisions and fosters important institutional goals, including: "(1) allowing the appropriate agency to develop a factual record and apply its expertise[,which] facilitates judicial review; (2) permitting agencies to grant the relief requested[, which] conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors[, which] fosters administrative autonomy." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996).

With these legal principles in mind, this Court finds that Petitioner has failed to fully exhaust his administrative remedies through an appeal of his bond decision to the BIA. However, in the interest of completeness, the Court will address whether there was compliance with its earlier Order, that is, whether Petitioner received an independent and adequate bond hearing before the immigration judge he was owed in the first place. See Quinteros, 2016 WL 6525295, at * 1; Leonard, 646 F.3d at 1161.

When reviewing a bond determination by an immigration judge following an order referring a case for individualized bond consideration, this Court's review is limited to three essential considerations: (1) whether the decision of the immigration judge paid full fidelity to the law of the case; (2) whether there has been no plain legal error by the immigration judge in identifying and applying the controlling legal precepts; and (3) whether the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process. German Chajchic v. Rowley, No. 1:17-CV-00457, Report and Recommendation, at 10-14.

As to the first consideration, having reviewed the audio recording of the bond hearing before the immigration judge (Doc. No. 10-1), the Court is satisfied that the hearing was in compliance with the Court's August 15, 2017, Order and in accord with

the law of the case. (Doc. No. 15.) As Respondent notes, the immigration judge referenced this Court's August 15, 2017 Order and marked it as an exhibit in the record. In assessing the danger to the community, the immigration judge, in a particularized and individual basis, cited to Petitioner's eleven criminal offenses, which began within a year of his arrival to the United States in 2009. (Doc. 10-1.) These offenses included several trespasses and driving under the influences, as well as a conviction of federal bank fraud. (Id.)

With regard to Petitioner's risk of flight, while the immigration judge acknowledged that Petitioner's removal order is on appeal, Petitioner was found to be subject to removal by an immigration judge and denied all relief. (Id.) According to the immigration judge, the Petitioner's removal order was a factor considered in designating him a flight risk. (Id.) Moreover, the immigration judge noted that his decision that Petitioner is a danger to the community and, alternatively, a flight risk, was based upon the "totality of the record," which included: "numerous documents showing Petitioner's familial ties within his home state of Minnesota;" "the fact that Petitioner has a child that lives with his wife;" a statement by Petitioner's wife that "she would be wholly responsible for Petitioner upon release, up to and including driving him to all required ICE supervision visits;" evidence by Petitioner's former employer that he was offered "employment upon release from ICE custody;" and Petitioner's statement of remorse and rehabilitation. (Doc. Nos. 8, 10-1.) While Petitioner "may be dissatisfied with his individualized assessment, it cannot be said that the immigration judge did not follow the law of the case[ ]as prescribed by this [C]ourt and conduct an individualized bond hearing." Chajchic v. Rowley, No. 1:17-CV-457, 2017 WL 4401895, at *4 (M.D. Pa.

7

July 25, 2017), report and recommendation adopted, No. 1:17-CV-457, 2017 WL 4387062 (M.D. Pa. Oct. 3, 2017).

In considering the second factor, this Court finds no plain legal error by the immigration judge in identifying and applying the controlling law. As noted above, the immigration judge correctly articulated that the Government has the burden, by clear and convincing evidence, to show two primary factors: (1) danger to the community, and (2) flight risk. (Doc. 10-1.) Because the immigration judge properly articulated these legal standards, the Court finds no legal error in this case.

Finally, in considering the third factor, the Court does not find that the immigration judge's exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process. When reviewing a discretionary denial of bond, the degree of arbitrariness necessary to state a constitutional claim is striking and the petitioner "bears the burden of showing that there is no rational basis in the record for the denial of bail." Martin v. Diguglielmo, 664 F. Supp. 2d 612, 621 (W.D. Pa. 2008) (quoting Finetti v. Harris, 609 F.2d 594, 601 (2d Cir. 1979)). Indeed, "federal courts do not sit as appellate courts to review the use or abuse of discretion of [other] courts in the granting or denying of bail," but rather, the "burden is on [the] petitioner to show that the record is devoid of a rational basis for the denial." Gorton v. Marsteller, 545 F. Supp. 994, 997-98 (D. Kan. 1982) (internal citations omitted); Colavita v. Pennsylvania, No. CIV.A. 08-3557, 2009 WL 616649, at *4 (E.D. Pa. Mar. 6, 2009) ("To sustain a federal claim, a petitioner must demonstrate the denial of bail was arbitrary or without any rational basis.").

In accord with these standards, the Court finds that the immigration judge's discretionary decision to deny bond to Petitioner was rational based upon Petitioner's criminal history as set forth above. Accordingly, as the immigration judge's conclusions were rational and not arbitrary or without rational basis, the Court will deny Petitioner's motion to reopen and this case will remain closed.

### III. CONCLUSION

For the reasons set forth above, Petitioner's motion to re-open the case (Doc. No. 8), will be denied and this case will remain closed. An appropriate Order follows.